(xHolson, J.
Upon the issues of fact joined between the parties in this ease, we should certainly feel bound to decide, that the bonds held by the relator are invalid, but for the considerations, that he is a bona fide holder of those bonds, that they are regular on their face, and that the statute has provided, that such bonds, issued and negotiated by the commissioners, shall be deemed “ conclusive evidence of the regularity of everything required by this act to be done prelim^ inary to the issuing and negotiation.” We have no difficulty in finding that the relator is a bona fide holder, and that the bonds are regular on the face thereof. We also think that the bonds were issued and negotiated within the meaning of the statute. They were executed by the commissioners, and delivered to the agents of the Dayton and Michigan Railroad *598 •Company, to be put into circulation, and must, as to a future bona fide holder, be regarded as “ issued and negotiated.” This issue of the bonds and delivery to the agents of the •company, is shown by the record of the proceedings of the ■commissioners. In form, also, as shown by the proceedings •of the directors of the railroad company and of the eommis•sioners, there was a vote of the electors of the county, and a •location, through the county, of the railroad. This location was soon abandoned, and, we think, the evidence shows, was not made in good faith, and that the real object was to aid another railroad company. Such a purpose was in fraud of the law, and illegal, but it does not ’appear on the face of the transaction, and there is no evidence that the relator had any notice of the fraud and illegality.
The question, then, as properly stated by the counsel for the defendants, is, whether they are estopped by the statute from showing, as against the relator, such fraud and illegality, to invalidate the bonds ? It is argued with ingenuity and force, that the statute does not extend to the want of power, but only to irregularity in the precedent steps. That the steps requisite to confer the power to issue the. bonds, must be substantially taken, and only irregularities in taking them are to be overlooked in favor of a bona fide holder. The distinction between a want of power, and irregularity in the •exercise of power, was recognized in the decision on the demurrer in this case. (11 Ohio St. Rep. 192.) When a particular matter is to be regarded a condition precedent to the exercise of a statutory power, conferred on such a body as the county commissioners, will depend on the construction of the statute. That which might otherwise be regarded a condition, may, in view of the evident object and intent, and to give proper effect to the language employed, be placed on the footing of an irregularity, or, what would ■ amount' to the same thing, it may be apparent, that those who have to act, are authorized to decide by their action that they have the authority to act.
In taking the steps required by the acts of the general assembly to precede the issue and negotiation of the bonds, *599 •such as the vote of the electors oh the question of subscription to the stock of the railroad company, and the location of the railroad in or through the county, it might become a question of some nicety, to draw the line between what would be substantial and what irregular. We can not think, that such a distinction was in the view of the legislature. The object was clear, it was to facilitate the negotiation of the bonds and add to their market value. It was doubtless expected, that they would be used in places where an inquiry into the mode in which the steps required had been taken, would be inconvenient, and the object was to render any such inquiry unnecessary. If the protection to a Iona fide holder, were extended only to what might be regarded as irregularities, in view of that distinction, it is ■ doubtful, whether any effect would be given to the enactment of the legislature — whether it would not amount to a mere superfluous declaration of what would be the rule of law on the subject. Eor it would be difficult to maintain, if the special provision as to the effect of bonds regular on their face were stricken from the act, that a Iona ■fide holder of the bonds would be affected by mere irregularities in the taking of the precedent steps, or in the exercise of power by the commissioners. The extreme case of an issue of the bonds without any attempt to take the precedent steps was not contemplated, and we have not to deal with such a case. The steps required were ostensibly and professedly taken; the bonds were issued and negotiated by the commissioners, are regular on their face; and the relator is a dona fide holder, and in our opinion, a fair construction of the statute requires us to hold, that he was not bound to inquire whether there was any defect in the precedent steps, and that his title to the bonds can not be invalidated by showing a defect, whether proceeding from intention or neglect.
The acts of the general assembly, under consideration were enacted before the adoption of the present constitution, and as has been frequently held, are not inconsistent yvith it; and we can not appreciate the argument, that the provision in that constitution against a loan of the credit of a oounty, gives to the illegal acts of the commissioners and the railroad *600 company an effect, as against a bona fide bolder of the bonds, which they would not otherwise have. A misappropriation of the proceeds of the bonds by a secret arrangement between the commissioners and the directors of the Dayton and Michigan Railroad Company, would be none the less illegal and a fraud on 'the law under which they were acting, because it contravened the spirit of a provision of the present constitution ; but we can not understand how it would be any more so, or that the degree of illegality could make any difference. After all, it can only amount to this, that the precedent steps required were taken, the bonds, regular in form, were issued and placed in the hands of the railroad company to be put into circulation, all in seeming compliance with the acts of the general assembly,but there was a secret understanding between the commissioners and the railroad company, that the bonds and their proceeds should be diverted from the purpose.for which they were authorized to be issued, and applied to another. If the secret understanding to misappropriate, can not properly affect the rights of a bona fide holder, and we think that neither on principle, nor in justice, nor on a fair construction of the statute ought he to be affected thereby, then, surely, the object of the misappropriation, whether for individual benefit, for another work of internal improvement, or for any other unauthorized purpose, can make no difference.
It is to be regretted, that those acting under such authority as that vested in the present instance, do not keep themselves within its limits, and exceed them either from design or from a want of a proper apprehension of the law. Rut we are satisfied that it .was the intention of the legislature, by a particular and special -provision of the statute, to protect a bona fide holder of the bonds, issued under the authority from the ordinary consequences of such illegal acts, and the issues will, therefore, be found for the state, and a peremptory mandamus will be awarded.
Peremptory mandamus awarded.
Sutlief, C.J., and Peck, Rsinkerhokf and Scott, J J., concurred.